**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br> Defendant. | **Civil Action No. 11-1777 (CKK)** |

**MEMORANDUM OPINION**
(June 13, 2013)

Plaintiffs National Wildlife Federation and Minnesota Conservation Federation filed suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, against the United States Environmental Protection Agency challenging 40 C.F.R. § 124.55(b), which governs certain discharge permits issued by the EPA pursuant to the Clean Water Act. Presently before the Court is the Defendant's [11] Motion to Dismiss for Lack of Jurisdiction. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds it lacks jurisdiction over the Plaintiffs' claim that section 124.55(b) is invalid. Accordingly, the Defendant's motion is GRANTED and this case is DISMISSED.

## I. BACKGROUND

A.     *Statutory Framework*

The Clean Water Act ("CWA" or the "Act") generally prohibits the discharge of pollutants except in compliance with the Act. 33 U.S.C. § 1311(a). One program that regulates

---

[1] Def.'s Mot., ECF No. [11]; Pls.' Opp'n, ECF No. [21]; Def.'s Reply, ECF No. [22]; Pls.' Surreply, ECF No. [23-1].

permits for the discharge of pollutants is the National Pollutant Discharge Elimination System, or NPDES. *Id.* § 1342. A party seeking a discharge permit under the NPDES must obtain "a certification from the State in which the discharge originates or will originate . . . that any such discharge will comply with the applicable provisions [of the Clean Water Act]." *Id.* § 1341(a)(1). The certification must set forth

> [A]ny effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal [] permit will comply with any applicable effluent limitations and other limitations, . . . standard of performance under section 1316 of this title, or prohibition, effluent standard, or pretreatment standard under section 1317 of this title, and with any other appropriate requirement of State law set forth in such certification, and shall become a condition on any Federal license or permit subject to the provisions of this section.

*Id.* § 1341(d); *see generally* 40 C.F.R. § 124.53. The EPA may not issue a permit until the state issues or waives the certification. Id.

The EPA may issue a general permit covering "one or more categories or subcategories of discharges . . . within a geographic area." 40 C.F.R. § 122.28(a)(1). Before issuing the permit, the EPA publishes a draft permit, including the proposed conditions and monitoring requirements, in the Federal Register. *Id.* § 124.6(e). Following a notice and comment period and receipt of the relevant state certification(s) (or waiver thereof), the EPA issues the final permit. *Id.*; *id.* at §§ 124.15(a), 124.55(b). EPA regulations provide that, consistent with the "reasonable time" requirement of section 1341(a)(1), state certification must be granted or denied within sixty days. 40 C.F.R. § 124.53(c)(3), (d). If a state has not granted, denied, or waived certification by the time the draft VGP is prepared, the EPA sends a copy of the draft permit to the state and indicates that the state will be deemed to have waived its right to certify unless it does so within sixty days from the date the draft permit is mailed. *Id.* § 124.53(c)

"If there is a change in the State law or regulation upon which a certification is based,"

2

the state may issue a modified certification.  40 C.F.R. § 124.55(b).  If the EPA receives the modified certification before the final permit issues, "the permit shall be consistent with the more stringent conditions which are based upon State law identified in such certification."  *Id.* However,

> If the certification or notice of waiver is received after final agency action on the permit, the [EPA] may modify the permit on request of the permittee only to the extent necessary to delete any conditions based on a condition in a certification invalidated by a court of competent jurisdiction or by an appropriate State board or agency.

*Id.* (emphasis added).  Section 124.55 was promulgated in 1980 as part of a comprehensive revision of the procedures governing the NPDES and other permitting systems.  *See* 45 Fed. Reg. 33,290 (May 19, 1980); *Natural Res. Def. Council v. EPA*, 673 F.2d 400, 401-02 & n.1 (D.C. Cir. 1980).  The Complaint challenges the validity of the portion of section 124.55(b) that prohibits the EPA from modifying permits to include more stringent conditions added to a state certification after a final permit issues.

      B.      *Vessel General Permit & Litigation History*

Historically discharges incidental to the normal operation of a vessel were exempt from NPDES permitting requirements.  *See* 45 Fed. Reg. 33418 (May 19, 1980) (promulgating 40 C.F.R. § 122.3).  Judge Susan Illston of the United States District Court for the Northern District of California invalidated that exemption in March 2005, finding the regulation was in excess of the EPA's authority under the Clean Water Act.  *Nw. Envtl. Advocates v. EPA*, No. 03-5760, 2005 WL 756614, at *13 (N.D. Cal. Mar. 30, 2005).  Effective December 19, 2008, discharges incidental to the normal operation of a vessel would be subject the permitting requirements of the Clean Water Act.  73 Fed. Reg. 79,473 (Dec. 29, 2008).

On June 17, 2008, the EPA published draft NPDES general permits for discharges

incidental to the normal operation of a vessel, applicable to discharges incidental to the normal operation of all recreational vessels and commercial vessels greater than or equal to 79 feet in length.   73 Fed. Reg. 34,296 (June 17, 2008).   The EPA requested a certification from the relevant state agencies, including the Minnesota Pollution Control Agency ("MPCA"), on July 8, 2008.   Compl. ¶ 22.   In response to MPCA's draft certification, the Plaintiffs submitted comments contending that, among other things, the proposed certification would be insufficient to prevent invasive species from being introduced into Minnesota's waters as a result of ballast water discharges covered by the proposed VGP.   *Id.* at ¶ 24.   MPCA issued its final certification on November 19, and notified the Plaintiffs of the final certification on December 4, 2008.   *Id.* at ¶¶ 25-26.

The Plaintiffs petitioned the Minnesota Court of Appeals to review the certification on December 17, 2008.   Compl. ¶ 27.   The EPA issued the final VGP twelve days later.   73 Fed. Reg. 79,473 (Dec. 29, 2008).   In September 2009, the Minnesota Court of Appeals dismissed the Plaintiffs' petition.   *U.S. EPA Vessel General Permit for Discharges Incidental to the Normal Operation of Commercial Vessels*, No. A08-2196, 2009 WL 2998058, at *4 (Sept. 22, 2009). The court rejected on the merits the contention that section 124.55(b) is invalid, and concluded that in light of the issuance of the final issuance of the VGP, the Plaintiffs' petition challenging the Minnesota certification was moot.   *Id.*   Invoking the Administrative Procedure Act ("APA"), the Plaintiffs filed suit in this Court on October 6, 2011, alleging section 124.55(b) is "inconsistent with and in excess of the EPAs statutory jurisdiction . . . [or] arbitrary, capricious, or otherwise not in accordance with the Clean Water Act."   Compl. ¶ 34.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the EPA moves to dismiss the

Complaint for lack of subject matter jurisdiction.  To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "At the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F.Supp.2d 163, 170 (D.D.C. 2007) (citations omitted).

## III. DISCUSSION

The EPA moves to dismiss the Complaint on the grounds that under section 509(b)(1)(E) of the Clean Water Act, Courts of Appeals have exclusive jurisdiction over any challenge to section 124.55(b).  Def.'s Mot. at 7-11.[2]  In the alternative, the EPA argues that the Plaintiffs

---

[2]  In a footnote, the EPA also argues that section 509(b)(1)(F) vests the Courts of Appeals with exclusive jurisdiction to review 40 C.F.R. § 124.55(b).  Def.'s Mot. at 9, n.4.  The Court "need not consider cursory arguments made only in a footnote."  *Hutchins v. District of Columbia*, 188 F.3d 531, 539, n.3 (D.C. Cir. 1999).  In any event, section 509(b)(1)(E) is dispositive of the Court's subject matter jurisdiction, therefore the Court need not reach the EPA's arguments regarding section 509(b)(1)(F).

failed to state a claim under the Administrative Procedure Act because (1) any facial challenge

had to have been filed within six years of the promulgation of the regulation; and (2) the

Complaint fails to identify any final agency action by the EPA applying the regulation within six

years of the filing of the Complaint as required for a timely as-applied challenge.  Def.'s Mot. at

11-16.[3]  This Court is bound by the D.C. Circuit's determination that all challenges to section

124.55 must be brought in the Courts of Appeals.   Therefore, the Court shall dismiss the

Complaint for lack of subject matter jurisdiction without reaching the question as to whether the

Plaintiffs stated a claim for relief under the Administrative Procedures Act.

A.   *Promulgation of Section 124.55(b) and Related Litigation*

> In 1978, President Carter signed Executive Order 12033, which required agencies
> such as the EPA to reform their procedures for issuance of regulations. . . .  In
> response to the presidential directive, the EPA issued the [Consolidated Permit
> Regulations ("CPR's")] under review in these cases.  These regulations comprise
> a comprehensive program designed to streamline permit procedures under five
> pollution-control programs involving four statutes: (1) the . . . Recovery Act
> (RCRA), 42 U.S.C. § 6901 *et seq.*; (2) . . . the Safe Drinking Water Act (SDWA),
> 42 U.S.C. § 300f *et seq.*; (3) the NPDES and (4) section 404 Dredge or Fill permit
> programs under the CWA; and (5) some procedural requirements . . . under the
> Clean Air Act (CAA), 42 U.S.C. s 7401 *et seq.*

*Natural Res. Def. Council v. EPA* ("*NRDC I*"), 673 F.2d 392, 395 (D.C. Cir. 1980).  The CPR's

encompassed parts 122 through 125 of title 40 of the Code of Federal Regulations.  *Id.* at 394

n.1.  After various parties filed suits challenging the regulations in different Courts of Appeals,

the D.C. Circuit concluded that "venue for review of all the CPR's was proper" in the D.C.

Circuit, but indicated that "[t]he NPDES aspect of the CPR's may [] be reviewable in a district

court rather than a court of appeals." *Id.* at 394-95 & n.6.

---

[3]  The Defendant's characterize the Plaintiffs' purported failure to state a claim under the Administrative Procedure Act as a jurisdictional defect in that there is no valid waiver of sovereign immunity.  The D.C. Circuit has held that the failure to identify a final agency action as required for an APA claim is not a jurisdictional defect.  *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183-84 (D.C. Cir. 2006).

Upon consolidation of the petitions for review from various Circuits, certain industry parties moved to dismiss the petitions concerning the NPDES regulations. *Natural Res. Def. Council v. EPA* ("*NRDC II*"), 673 F.2d 400, 401-02 (D.C. Cir. 1982).  The D.C. Circuit's disposition of the motion to dismiss turned on the applicability of section 509(b)(1) of the Clean Water Act, which provides in relevant part that

> Review of the Administrator's action . . . (E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title . . . may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action upon application by such person.

33 U.S.C. § 1369(b)(1)(E)-(F).  "Any such application shall be made within 120 days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such application is based solely on grounds which arose after such 120th day." *Id*.

As the D.C. Circuit explained, "[t]he phrase 'effluent limitation or other limitation' in section 509(b)(1)(E) has in fact been interpreted to include more than numerical limitations." *NRDC II*, 673 F.2d at 403.  The court noted that "[s]ome of the CPR's . . . restrict who may take advantage of certain provisions or otherwise guide the setting of numerical limitations in permits," and "the CPR's are a limitation on point sources and permit issuers and a restriction on the untrammeled discretion of the industry that existed before passage of the CWA." *Id.* at 404-05 (citations omitted).  Accordingly, the court held that the NPDES-related CPR's "are an 'effluent limitation or other limitation' under section 509(b)(1)(E)," which "vests initial authority to review the challenged regulations in the courts of appeals." *Id.* at 402, 407.

B.      *Applicability of Section 509(b)(1)(E) to 40 C.F.R. § 124.55(b)*

Relying on *NRDC II*, the EPA argues this Court lacks jurisdiction over the Plaintiffs' challenge to section 124.55(b).  The Plaintiffs suggest that section 124.55 falls outside the scope

of the *NRDC II* decision for two reasons: (1) "[u]nlike most of the CPRs at issue . . . [section 124.55] does not set out procedures for issuing or denying NPDES permits authorized under CWA § 402"; and (2) despite the plain language of *NRDC II*, the D.C. Circuit did not decide that every regulation in the CPR's was reviewable under section 509(b)(1)(E).  Pls.' Opp'n at 9-10 & n.4.  Neither argument is persuasive.

First, the Plaintiffs offer no explanation as to why section 124.55(b) does not set out a procedure for issuing a NPDES permit.  Section 124.55(b) sets out a procedure for states to revise conditions for NPDES permits by submitting revised certifications to the EPA, and requires the revised certifications to be received by the EPA prior to issuance of the permit in order to take effect.  In other words, this section governs how and when conditions included in state certifications are incorporated into the final VGP, part of the "procedure for issuing a NPDES permit."  Moreover, the *NRDC II* decision was not limited to CPR's that set out procedures for issuing or denying permits as the Plaintiffs' argument implies.  *See NRDC II*, 673 F.2d at 404-05.  To the contrary, the D.C. Circuit favorably cited the Fourth Circuit's decision in *VEPCO v. Costle*, 566 F.2d 446 (4th Cir. 1977), which held that regulations "refer[ring] to *information that must be considered* in determining the type of intake structures that individual point sources may employ, and, by that token, they *are [other] limitations*" under section 509(b)(1)(E).  *NRDC*, 673 F.2d at 403 (citing *VEPCO*, 566 F.2d at 450) (emphasis added).  By the same token, section 124.55(b) governs what information the EPA must—and cannot— consider in issuing a VGP.  Section 124.55(b) is indistinguishable from the categories of CPR's specifically referenced in *NRDC II* as falling within the scope of section 509(b)(1)(E) of the Clean Water Act.

Second, the D.C. Circuit explicitly held that "*the* CPR's are an 'effluent limitation or

other limitation' under section 509(b)(1)(E)." *NRDC II*, 673 F.2d at 407 (emphasis added); *id.* ("We have authority to review *any* CPR's that are ripe for review.") (emphasis added). This language plainly precludes this Court from reviewing any challenge to any of the NPDES-related CPR's, including section 124.55(b). The Plaintiffs rely on *NRDC I* for the proposition that "*[m]ost* of the CPR'ss are procedural rules designed to implement permitting under these separate programs." *NRDC I*, 673 F.2d at 395 (emphasis added). This language refers to the entirety of CPR's, which concerned five different permitting programs under four separate statutes. The most one can draw from the quoted language in *NRDC I* is that most of the CPR's, across all five permitting systems, are procedural rules, but some may not be. However, this phrase does not purport to represent any conclusion by the D.C. Circuit as to whether all of the NPDES-related CPR's were "procedural." Moreover, the *NRDC I* court specifically reserved the question of whether the NPDES-related CPR's were reviewable in the district court or the courts of appeals. The *NRDC II* decision conclusively decided that issue against the Plaintiffs, and this Court is bound by that holding. Any challenge to section 124.55(b) must be brought in the Courts of Appeals. Because this Court lacks subject matter jurisdiction over the Plaintiffs' claims as a threshold matter, the Court need not reach the Defendant's contention that any challenge brought in a Court of Appeals would be untimely. Def.'s Mot. at 10-11.

## IV.  CONCLUSION

For the foregoing reasons, this Court lacks subject matter jurisdiction over the Plaintiffs' claim. The D.C. Circuit previously determined that the Courts of Appeals have exclusive jurisdiction to review challenges to the NPDES-related regulations of the Consolidated Permit Regulations promulgated by the EPA in 1980. The Plaintiffs now seek to challenge one of those regulations, but the Court is bound by the D.C. Circuit's jurisdictional determination.

Accordingly, the Defendant's [11] Motion to Dismiss for Lack of Jurisdiction is GRANTED and

the Complaint is DISMISSED for lack of subject matter jurisdiction.

_____*/s/*_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE